**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

**RAYMOND C. BRADBURY
HEATHER A. BRADBURY**

     **VS**

**DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE
FOR GSAMP TRUST 2005-WMC1 ALIAS
OCWEN LOAN SERVICING, LLC.**

## COMPLAINT

Plaintiffs, by their attorney, state the following:

1. Plaintiffs are residents of the State of Rhode Island with an address of 61 Lafayette Street, West Warwick, Rhode Island. They own said real estate located at 61 Lafayette Street, West Warwick, Rhode Island.

2. Plaintiffs executed a mortgage to Mortgage Electronic Registration Systems, Inc.("MERS") as Nominee for WMC Mortgage Corp. on June 9, 2005. A copy is attached as Exhibit A.

3. Plaintiff's mortgage does not contain a grant to MERS or any entity of the Statutory Power of Sale.

4. The standard mortgage used by MERS is attached to this complaint as Exhibit B.

5. The language in the standard Fannie Mae/Freddie Mac Uniform Instrument in Exhibit B in the section entitled TRANSFER OF RIGHTS IN THE PROPERTY, which conveys to the mortgagee the statutory power sale states:

Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property.

1

6.     Plaintiffs' mortgage does not contain language which granted the mortgage to MERS upon the Statutory Condition and with the Statutory Power of Sale.

7.     Plaintiff's mortgage in the section entitled TRANSFER OF RIGHTS IN THE PROPERTY states:

Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property.

8.     In Plaintiffs' mortgage they did not convey the property to the mortgage upon the statutory condition and with the statutory power of sale.

9     Defendant, Deutsche Bank National Trust Company as trustee for GSAMP Trust 2005-WMC1. ("Deutsche Bank") claims to own Plaintiffs' mortgage

10.    Defendant, Ocwen Loan Servicing, LLC ("Ocwen") is a limited liability company, organized pursuant to the laws of Delaware. It is a debt collector and asserts that it is the loan servicer for the Plaintiffs' mortgage

11.    This Court has jurisdiction pursuant to diversity jurisdiction , as the Plaintiffs are residents of Rhode Island, Deutsche Bank is a National Bank, which was organized outside of the State of Rhode Island and Ocwen Loan Servicing, LLC is a limited liability company organized in Delaware, whose members are not residents of the State of Rhode Island. The amount of the mortgage balance is greater than $75,000.00.

12.    Orlans, PC ("Orlans") on November 7, 2018, has scheduled a foreclosure sale for Plaintiffs' home on December 31, 2018 at 1:00 PM, as indicated by Exhibit C.

13.    This Notice claims that the foreclosure sale will occur pursuant to power of sale and by entry.

14.    No person signed this Notice on behalf of either Orlans or Deutsche Bank.

15.     Orlans, Ocwen and Deutsche Bank have not sent Plaintiff a notice pursuant to the provisions of paragraph 22 of their mortgage and have not accelerated the note.  Plaintiffs have never been sent a default notice from the owner of the note or mortgage.

16.     Before an acceleration of the loan was declared, the Lender was required to send Plaintiffs a notice to their home address which specified:

     a.     the default;

     b.     the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

     c.     that failure to cure the default on or before the date specified in the Notice may result in the acceleration and sale of our home

     d.     the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

17.     Paragraph 22 of Plaintiffs' mortgage, reads as follows:

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The  notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that  failure to cure the default on or before the date specified in the notice  may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not  cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies**

**provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

18. The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage, had the mortgagee been granted the statutory power of sale in the mortgage. There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above.

19. Any alleged exercise of the statutory power of sale to Plaintiffs was defective because a default notice and a valid acceleration notice were never sent as required by paragraph 22 of the mortgage and because the statutory power of sale was not granted in the mortgage.

20. Ocwen mailed Plaintiffs a letter dated April 30, 2018, which it claimed to be a default notice. A copy is attached as Exhibit D.

21. This letter did not comply with Paragraph 22 of the mortgage.

22. Paragraph 22 (c) of Plaintiffs' mortgage required a default notice which specified:

**(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured**

23. However this letter did not specify a particular date for the cure date. Instead it stated:

4

In order to cure the default, payment for the entire total amount past due plus any amount(s) that become(s) due in the interim must be received on or before 06/06/2018.

24.     This letter thus was not consistent with the terms of the mortgage.

## COUNT I

**BREACH OF CONTRACT AND OF THE COVENANT OF GOOD FAITH AND DEALING**

25.     Paragraphs 1- 24 are incorporated by reference.

26.     Paragraph 22 of the mortgage provides that the Lender must send a notice of default which contains specific language as a condition precedent to acceleration and sale.

27.      Plaintiffs never received any default letter, which included language required by the terms of the mortgage from the lender or owner of the note or the mortgage or an agent indicating that it was acting on behalf of the lender or owner of the note and the mortgage.

28.     Plaintiffs' mortgage did not grant the Statutory Power of Sale to any mortgagee.

29.     If the mortgage contained a grant of the statutory power of sale, it could only be exercised pursuant to the Plaintiffs being sent a Notice of Mediation, a default letter pursuant to the terms of the mortgage, followed by an acceleration letter and a Notice of Sale pursuant to R.I.G.L.34-27-4.

30.     Due to this failure to comply with the terms of the mortgage and the fact that the statutory power of sale was not conveyed to MERS or any mortgagee, no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiffs' property at any time

31.     The actions of Deutsche Bank constituted a breach of contract, resulting in damages to the Plaintiffs, who hired an attorney to commence this case.

32. The mortgage contract between Plaintiffs and the mortgagee and its successor or assignee contained an implied covenant of good faith and dealing between the parties so that the contractual obligation of the contract might be achieved.

33. The mortgage contract did not incorporate the Rhode Island Statutory Power of Sale.

34. In the event of default, the only way to foreclose on the Plaintiffs' mortgage was by a Judicial Foreclosure due to the language of the mortgage, which did not grant the property to the mortgagee With Mortgage Covenants.

35. Deutsche Bank violated the covenant of good faith and dealing by scheduling a foreclosure sale in violation of the terms of the mortgage by seeking to exercise the statutory power of sale even though the mortgage contract did not contain a grant of the Statutory Power of Sale.

36. Even if the mortgage did contain the statutory power of sale, which is expressly denied, Deutsche Bank violated the covenant of good faith and dealing by scheduling a foreclosure sale in violation of the terms of the mortgage by seeking to exercise the statutory power of sale without the lender having first sent a default notice to the Plaintiffs, which contained language required by the terms of the mortgage.

37. The failure to send an accurate default letter pursuant to the terms of the mortgage and then mailing a Notice of Sale were actions taken contrary to the contractual and statutory obligations of the parties.

38. As a result, Plaintiffs have incurred the following damages:

   a. Plaintiffs have incurred the cost of filing this action in the form of filing fees and service fees, incurred in order to stop the nonjudicial foreclosure, which was in violation of the terms of the mortgage.

   b. Plaintiffs' mortgage loan account has been charged fees and costs which were not permitted without a valid

        default letter having being sent to them and despite the fact that the mortgage did not grant the Statutory Power of Sale to the mortgagee.

    c.    Plaintiffs have incurred damages for Plaintiffs' aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety. They have incurred stress with mail advising them that their home will be sold at a public auction.

    d.    Plaintiffs have incurred attorney fees and costs to obtain an injunction to stop the illegal foreclosure.

    e.    Plaintiffs have incurred attorney fees and costs for the prosecution of this action.

39. The conduct of Deutsche Bank were willful, wanton and reckless, warranting the imposition of punitive damages.

40. Deutsche Bank ignored the clearly stated terms of the mortgage and case law in this Court holding that a mortgage contract involves strict compliance in order to exercise the statutory power of sale.

41. Deutsche Bank ignored the clearly stated terms of the mortgage and have sought to exercise the Statutory Power of Sale, when the Statutory Power of Sale was not granted to the mortgagee.

42. Instead Deutsche Bank has gone forward and have sought to exercise the statutory power of sale without a valid default notice and without the benefit of a grant of a mortgage with mortgage covenants and without the ability to foreclose by the exercise of the statutory power of sale.

43. Deutsche Ban k has breached the mortgage contract by charging the Plaintiffs excessive and unreasonable and unnecessary expenses for an improper foreclosure and inaccurate charges.

44. Deutsche Bank has breached the contract by charging monthly property inspection wo the mortgage loan account which were neither

7

reasonable nor necessary and which were not actually paid contrary to the terms of the mortgage.

WHEREFORE, Plaintiffs demands the following relief:

    a.    Damages against Deutsche Bank for failure to comply with the terms of the mortgage.

    b.    Damages against Deutsche Bank for charging the Plaintiffs unreasonable and unnecessary foreclosure fees and other improper and unreasonable and unnecessary costs charged to the mortgage loan account.

    c.    Actual damages attributable to the aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety and stress suffered by the Plaintiffs.

    d.    Damages for punitive damages

    e.    Legal fees from Deutsche Bank pursuant to the provisions of R.I.G.L § 9-1-45.

    f.    All other just and proper relief.

RAYMOND C. BRADBURY
HEATHER A. BRADBURY
By their Attorney

December 21, 2018        /s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT II
## INJUNCTIVE RELIEF

45. Paragraphs 1-44 are incorporated by reference.

46. Plaintiffs will be irreparably harmed if the foreclosure sale on December 31, 2018 occurs and their home is sold.

47. Plaintiffs have a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

48. The failure of the Defendant to comply with paragraph 22 of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability to exercise the statutory power of sale. This demonstrates that Plaintiffs have a substantial likelihood of success.

49. The fact that the Plaintiffs did not grant to the original mortgagee the statutory power of sale and with the statutory condition and that the mortgage was not granted to the original mortgagee with Mortgage Covenants and the Statutory Power of Sale as required by R.I.G.L. §34-11-22 and R.I.G.L. § 34-11-12.

50. Likewise a foreclosure of Plaintiffs' property by a party not entitled to foreclose on the property will cause Plaintiffs irreparable harm, which hardship is greater than any hardship, which may be claimed by Defendant.

51. Such relief sought by Plaintiffs will not disserve the public interest if imposed.

52. The failure of the Defendants to comply with paragraph 22 of the mortgage and failure to mail a Notice of Sale renders any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability due to the terms of the mortgage and the fact that the mortgage did not contain a grant of the Statutory Power

of Sale. This demonstrates that Plaintiffs have a substantial likelihood of success.  Likewise a foreclosure of Plaintiffs' property by a party not entitled to foreclose on the property by the exercise of the statutory power of sale will cause Plaintiffs  irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants. Such relief sought by Plaintiffs will not disserve the public interest if imposed.

WHEREFORE, Plaintiffs demand that this Court:

a. Grant a Preliminary Injunction Restraining and Enjoining Deutsche Bank, Ocwen  or any other entity acting on their behalf from conducting, advertising or continuing a  foreclosure  sale at 71 Lafayette Street, West Warwick, Rhode Island pending a hearing on a Permanent Injunction

b. Grant a Permanent Injunction enjoining Deutsche Bank, Ocwen  or any other entity acting on their behalf from conducting, advertising or continuing a  foreclosure  sale at 71 Lafayette Street, West Warwick, Rhode Island until  further Order of this Court.

c. Award the Plaintiffs actual damages and compensatory damages and legal fees and costs against the Defendants for scheduling a foreclosure without complying the  terms of the mortgage

d. Grant all other just and proper relief.

        RAYMOND C. BRADBURY
        HEATHER A. BRADBURY
        By their Attorney

December 21, 2018        /s/ John B. Ennis
        JOHN B. ENNIS, ESQ. #2135
        1200 Reservoir Avenue
        Cranston, Rhode Island 02920
        (401) 943-9230
        Jbelaw75@gmail.com

## COUNT III

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY DEUTSCHE BANK'S FAILURE TO SEND THE PLAINTIFFS A MONTHLY MORTGAGE STATEMENT EACH MONTH PURSUANT TO THE PROVISIONS OF 12 C.F.R. 1026.41 AND 15 U.S.C. 1638 SINCE APRIL 19, 2018.**

53. Paragraphs 1-52 are incorporated by reference.

54. This is an action for damages brought by the Plaintiffs, who are consumers, for Deutsche Bank's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

55. Specifically, Plaintiffs seek the remedies provided in TILA for Defendant's failure to send the Plaintiffs monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

56. This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for failure to respond to provide a borrower monthly statements. 15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00. Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

57. The Defendant, Deutsche Bank is a National Bank that is the trustee of the securitized trust that claims to own the Plaintiffs' mortgage loan.

58. Ocwen services residential mortgage loans and claims to be the servicer of the mortgage loan, which is the subject of this complaint

59. The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

60. Plaintiffs have not been sent a monthly statement in compliance with 12 C.F.R. 1026.41 since April 19, 2018.

61.     Pursuant to 12 C.F.R. 1026.41, the loan servicer on behalf of the creditor, Wells Fargo was required to send the Plaintiffs a monthly mortgage statement that provides the following information:

**(d)** *Content and layout of the periodic statement.* The periodic statement required by this section shall include:
**(1)** *Amount due.* Grouped together in close proximity to each other and located at the top of the first page of the statement:
**(i)** The payment due date;
**(ii)** The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and
**(iii)** The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.
**(2)** *Explanation of amount due.* The following items, grouped together in close proximity to each other and located on the first page of the statement:
**(i)** The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;
**(ii)** The total sum of any fees or charges imposed since the last statement; and
**(iii)** Any payment amount past due.
**(3)** *Past Payment Breakdown.* The following items, grouped together in close proximity to each other and located on the first page of the statement:
**(i)** The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and
**(ii)** The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.
**(4)** *Transaction activity.* A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

**(5)** *Partial payment information.* If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

**(6)** *Contact information.* A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement.

**(7)** *Account information.* The following information:
**(i)** The amount of the outstanding principal balance;
**(ii)** The current interest rate in effect for the mortgage loan;
**(iii)** The date after which the interest rate may next change;
**(iv)** The existence of any prepayment penalty, as defined in § 1026.32(b)(6)(i), that may be charged;
**(v)** The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

**(8)** *Delinquency information.* If the consumer is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:
**(i)** The date on which the consumer became delinquent;
**(ii)** A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;
**(iii)** An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;
**(iv)** A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;
**(v)** A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;
**(vi)** The total payment amount needed to bring the account current; and
**(vii)** A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

62. None of these statements have been sent to the Plaintiffs, inconformity with Regulation Z since April 19, 2018.

63. The Plaintiffs have been charged regular fees for Property Inspection in a monthly charge of $10.50 on the statements. These fees were neither reasonable nor necessary and were not actually paid to the vendor which purportedly billed the loan servicer.

64. Advertising costs and foreclosure fees have been charged to the mortgage loan account and reflected in each of the periodic monthly statements despite the fact that neither lender, the assignee or the servicer of the alleged owner of the mortgage loan were not authorized to exercise the statutory power of sale.

65. These fees were not accurate because they included fees for foreclosure and related expenses despite the fact that the Plaintiffs' mortgage did not contain the statutory power of sale and no default letter pursuant to the terms of the mortgage was ever sent to the Plaintiffs.

66. These charges have resulted in an incorrect calculation of principal and interest in all statements sent to the consumer by Ocwen on behalf of Deutsche Bank.

67. As a result of this failure to comply with 12 C.F.R. 1026.41 and TILA, Defendant, Deutsche Bank is liable for actual damages and statutory damages of up to $4,000.00 to each Plaintiff for each of the statements, which were either not sent to the Plaintiffs since April 19, 2018 or were not accurate and not in conformity with 12 C.F.R. 1026.41 and TILA.

68. They have has incurred actual damages, costs and legal fees in regard to this action:

    a. Their mortgage loan account has been charged unreasonable charges on the statements.

    b. They haves incurred costs for gasoline to visit her attorney on at least five occasions, driving to their attorney's office for a round trip totaling 9.8 miles to discuss the reason no statements were being sent to them. The IRS standard mileage allowance provides for .56 per mile.

    b.    They have incurred postage costs, copying costs and stationary and envelope costs for transmission to the Defendant's loan servicer requesting copies of all periodic statements.

    c.    They have incurred attorney fees and costs for the prosecution of this action. Their fee agreement with their attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

WHERFORE, Plaintiff demands Judgment against Deutsche Bank for statutory damages of at least $4,000.00, for each Plaintiff, for each failure to send a monthly mortgage statement in conformity with TILA since April 19, 2018 plus actual damages, plus attorney fees and costs and all other just and proper relief.

                                  RAYMOND C. BRADBURY
                                  HEATHER A. BRADBURY
                                  By their Attorney

December 21, 2018                    /s/ John B. Ennis
                                  JOHN B. ENNIS, ESQ. #2135
                                  1200 Reservoir Avenue
                                  Cranston, Rhode Island 02920
                                  (401) 943-9230
                                  Jbelaw75@gmail.com

## COUNT IV
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692 AGAINST OCWEN

69. Paragraphs 1-68 are incorporated by reference.

70. Ocwen is a debt collector as defined by 15 USC 1692 et seq. since December 22, 2017 has committed several violations of the Fair Debt Collection Practices Act ("FDCPA") and is liable to the Plaintiffs for compensatory damages, statutory damages, and attorney fees and costs for violations.

71. The primary business of Ocwen is the collection of debts.

72. At the time Ocwen commenced servicing Plaintiffs' mortgage loan account, Plaintiffs were delinquent on her mortgage.

73. Ocwen has used unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiffs.

74. Ocwen, through its attorney, has threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiff of her property even though Deutsche Bank had no present right to possession of the property claimed as collateral through an enforceable security interest.

75. It also made a threat to take legal action which could not legally be taken. Specifically it stated, through its attorney, by the letter dated November 7, 2018 that a Mortgage Foreclosure sale of the Plaintiffs' property by statutory power of sale would occur on December 31, 2018 at 1:00 PM.

76. The last threat to conduct a Mortgage Foreclosure Sale on December 31, 2018 was a deceptive action on the part of Ocwen due to the failure to provide an accurate default notice and due to the fact the the mortgage did not contain a grant of the Statutory Power of Sale.

77. In the April 30, 2018 purported default letter, Ocwen falsely stated the principal and interest payment due was $70,730.20, the escrow

arrearage was $33,252.53, the late charges due were $52.01and the fees and expenses were $13.06.

78. On April 30, 2018, May 5, 2018 and May 7, 2018, Ocwen called the Plaintiff, Heather A. Bradbury on her cell phone in an attempt to collect a debt despite the fact that it was aware she had an attorney.

79. In the third of these calls the Ocwen employee indicate that Ocwen wanted to discuss the balance of the mortgage loan.

80. On April 30, 2018, May 5, 2018 and May 7, 2018, Ocwen called the Plaintiff, Heather A. Bradbury on her cell phone in an attempt to collect a debt despite the fact that it was aware that she had an attorney.

81. On April 30, 2018 and May 5, 2018 , Ocwen called the Plaintiff, Raymond C. Bradbury on his cell phone in an attempt to collect a debt despite the fact that it was aware that he had an attorney.

82. Each of these actions of Ocwen was a violation of 15 U.S.C. 1692e(5).

83. The facts alleged in this complaint establish that Freddie Mac did not have the present right to possession of the property claimed as collateral through an enforceable security interest.

84. As alleged above, Ocwen violated 15 U.S.C 1692e(5) by threatening to take legal action which it could not take.

85. Ocwen also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt. Ocwen made false representations regarding the character and legal status of the debt, namely that the loan had been accelerated and that Deutsche Bank could exercise the statutory power of sale.

86. All the actions of Ocwen, alleged in this complaint, were designed to compel the Plaintiffs to pay monies to Ocwen on behalf of Deutsche Bank, individually and through its attorney, on behalf of the alleged owner of the note and mortgage under the false threat of foreclosure

17

of their home unless they made such a payment to Ocwen, through its attorney on behalf of the entity, which claimed to own the note.

87. 15 U.S.C. § 1692(f) provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

88. 15 U.S.C. § 1692(d) provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

89. Ocwen violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

90. Ocwen violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect the subject debt.

91. Ocwen conduct has caused Plaintiffs to suffer great emotional distress driven by the fear that she might lose their home which has resulted in loss of sleep, anxiety, depression, and embarrassment.

92. Ocwen's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for Plaintiffs' rights.

93. The Plaintiffs have incurred actual damages as a result of the violations of the FDCPA:

    a. Plaintiffs have incurred costs for gasoline to visit their attorney on at least 5 occasions, driving to their attorney's office for five round trips totaling more than 9.8 miles. The IRS standard mileage allowance provides for .56 per mile.

    b. Plaintiffs has used their cell phone to call and receive calls from their attorney after receiving the notices. These calls are charged to them pursuant to their cell phone usage and monthly fees.

    c. Plaintiffs have used electricity to recharge their cell phone for calls when they spoke with their attorney regarding

these communications that they received from Ocwen threatening foreclosure.

d.  They have incurred costs of mailing and postage and attorney fees and costs to respond to these false communications.

e.  They have suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of their home.

f.  They have incurred legal fees to communicate with Ocwen's attorney to cancel this improper attempted sales.

g.  Their mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs. Such costs have rendered a modification of the mortgage loan or reinstatement of the mortgage loan more expensive to the Plaintiffs.

h.  They have been disturbed at home and work by phone calls from Ocwen employees attempting to collect the debt.

94. As a result of the above described acts of Ocwen it is liable to the Plaintiffs for actual damages, statutory damages, attorney's fees and costs.

95. Plaintiffs have incurred legal fees in this action.

WHEREFORE, Plaintiffs demand that Judgment be entered against Ocwen for the following relief:

A.  Judgment against Ocwen for actual damages, and statutory damages of $1,000.00 for each violation of the FDCPA.

B.  Legal fees for the prosecution of this action.

C.  All other just and proper relief.

                                                 RAYMOND C. BRADBURY
                                                 HEATHER A. BRADBURY
                                                 By their Attorney

December 21, 2018                               /s/ John B. Ennis
                                                       JOHN B. ENNIS, ESQ. #2135
                                                       1200 Reservoir Avenue
                                                       Cranston, Rhode Island 02920
                                                       (401) 943-9230
                                                       Jbelaw75@gmail.com

Plaintiffs demand a Trial by Jury