## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

RAYMOND C. BRADBURY; and
HEATHER A. BRADBURY,

       Plaintiffs,

v.

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee for GSAMP TRUST
2005-WMC1; and OCWEN LOAN SERVICING,
LLC,

       Defendants.

C.A. No. 1:18-cv-00690-WES-PAS

## SUPPLEMENTAL MEMORANDUM IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

Defendants Deutsche Bank National Trust Company, as Trustee for GSAMP Trust 2005-WMC1 ("DBNTC, as Trustee") and Ocwen Loan Servicing, LLC ("Ocwen") (collectively "Defendants") submit the following memorandum to address the question of whether Plaintiff Raymond and Heather Bradbury's ("Plaintiffs") Chapter 13 bankruptcy pre-petition plan payments cured the September, 2012 default and required a mediation notice under Rhode Island law. The answer is no. The analysis that follows demonstrates as a matter of law that Plaintiffs failed to cure the default by not paying the outstanding debt owed in full reinstatement of the mortgage loan at any time.

## II. LEGAL ARGUMENT

## A. Rhode Island's Mediation Statute and the Federal Bankruptcy Code's Chapter 13 Plan

Under Rhode Island law, a lender is not required to provide a borrower with notice of mediation conference prior to the initiation of foreclosure proceedings if "[t]he date of default

under the mortgage is on or before May 16, 2013." R.I. Gen. Laws § 34-27-3.2(o)(2). Section 34-27-3.2(c)(1) defines default for purposes of the mediation statute as "the failure of the mortgagor to make a timely payment of an amount due under the terms of the mortgage contract, *which failure has not been subsequently cured*." (emphasis added). The Rhode Island Department of Business Regulation's Banking Regulation 5 governs mortgage foreclosures and interprets the requirements under § 34-27-3.2 identically by defining default as "the failure of the mortgagor to make a timely payment of an amount due under the terms of the mortgage contract, which failure has not been subsequently cured." Banking Reg. 5, § 4. There are no decisions in the Rhode Island state or federal courts that interpret specifically what is required to subsequently cure default under the mediation statute.

The United States Bankruptcy Code permits a debtor in a Chapter 13 petition to file a plan that "provide[s] for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured or secured claim…." 12 U.S.C. § 1322(b)(5). In *Ameriquest Mortg. Co. v. Nosek (In re Nosek)*, 544 F.3d 34, 45-46 (1st Cir. 2008), the First Circuit Court of Appeals explained the operation of mortgage payments and steps necessary to reinstate a mortgage during a Chapter 13 bankruptcy plan:

> [Section] 1322(b)(5) explicitly authorizes debtors to cure any defaults on a long-term debt, such as a mortgage, and to maintain payments on the debt during the life of the plan. Although the debtor may not change the material terms of the underlying debt, she may stave off foreclosure on her residence by curing a previous default. The effect of the provision is to essentially split each of [the debtor]'s secured claims into two separate claims – the underlying debt and the arrearages. Typically, the pre-petition arrearages payments are made through the plan by the Chapter 13 trustee, while the current amounts due are made directly to the lender.

According to the First Circuit, "[i]f the debtor is successful in curing the default, the debt is reinstated to its pre-default position, thereby return[ing] the debtor and creditor to their respective positions before the default." *Id.* As a matter of procedure, once the debtor makes all

2

payments under a confirmed Chapter 13 plan, the trustee files and serves a notice of final cure payment stating that debtor has paid in full the amount required to cure, and it is incumbent upon the holder of the claim to serve and file a response indicating whether the debtor has paid the full amount. USCS Bankruptcy R 3002.1(f)-(g).

### B. Curing a Default Requires Reinstatement under the Bankruptcy Code

Federal courts have analyzed the term "cure" in relation to a Chapter 13 repayment plan under Section 1332(b)(5). In *In re Clark*, 738 F.2d 869 (7th Cir. 1984), the Seventh Circuit reviewed a question of whether a debtor who filed a Chapter 13 petition is entitled to cure the default on a residential mortgage loan even though he filed the petition after judgment of foreclosure issued. While the Court's decision reached an issue that is distinguishable from the Plaintiffs' plan or claim in this case, the Seventh Circuit provided an analysis of the term of "cure" under Section 1322(b). The Court determined that a common law definition of "cure" requires reinstatement of the loan in full and to its position prior to default:

> The common meaning of "cure" is to remedy, restore, remove, or rectify, *see* Webster's Third International Dictionary 555 (1971), and as the term relates to defaults, "cure" means to restore matters to the *status quo ante*. Ordinarily, the means by which one cures a default is by paying all amounts due and owing; however, "cure" is the end, not the means, and what the term refers to is the restoration of the way things were before the default. Thus, the plain meaning of "cure," as used in § 1322(b)(2) and (5), is to remedy or rectify the default and restore matters to the *status quo ante*.

*Id.* at 872 (internal citations omitted).

Federal courts in numerous jurisdictions have applied the Seventh Circuit's analysis in *Clark* to interpret the definition of cure in determining the validity of a debtor's Chapter 13 plan. *See, e.g., Litton v. Wachovia Bank (In re Litton)*, 330 F.3d 636, 644 (4th Cir. 2003) (the court describes "cure" as reinstating a debt to its pre-default position, or returning the debtor and creditor to their respective positions before the default); *Olsen v. Habitat for Humanity (In re*

1016248\305067410.v1

*Olsen*), 363 B.R. 908, 910  (BAP 8th Cir. 2006) ("Curing a default returns the situation to pre-default conditions and nullifies the consequences of that default."); and *In re French*, 174 B.R. 1, 7 (Bankr. D. Mass. 1994) ("the definition of 'cure' under §§ 1322(b)(3) and (5) necessarily required the restoration of the parties' relationship to the status quo ante.[1]"). These courts have uniformly concluded that cure not only requires paying all amounts due and owing, it also requires the debtor to restore the mortgage loan contract to its position prior to default.

The First Circuit's Bankruptcy Appellate Panel has applied the cure requirement of Section 1332(b)(5) to affirmed the approval of a lender's request for relief from the automatic stay to foreclose when the debtors failed to make post-petition payments. *Anglin v. Regions Mortg. Inc. (In re Anglin)*, No. MW 00-055, 2001 Bankr. LEXIS 1908, at *2 (B.A.P. 1st Cir. Mar. 26, 2001). In *Anglin*, the debtors sought Chapter 13 bankruptcy protection to cure a pre-petition mortgage arrearage, but following confirmation of the plan, and even though the debtors made pre-petition payments, the debtors defaulted on the post-petition payments to the lender. The bankruptcy court granted the lender relief from the automatic stay to foreclose on the mortgage as a result of the default. *See id.* at *2-3. The First Circuit (Bankruptcy Appellate Panel) affirmed relief from stay, finding that the debtors failed to make nineteen consecutive post-petition mortgage payments under the terms of the Plan, and therefore, relief from the stay was appropriate. *See id.* at *7-8. By failing to make both pre and post-petition payments under the Chapter 13 plan, the debtors failed to restore and reinstate the mortgage, which allowed the lender valid and enforceable grounds to foreclose.

---

[1] "Status quo ante" literally means'[t]he situation that existed before something else (being discussed) occurred." *Status Quo Ante*, Black's Law Dictionary (10th ed. 2014).

4

### C. State Default Statues Support the Federal Courts' Interpretation of the Term "Cure" as a Reinstatement Requirement

While Rhode Island's mediation statute does not define or specify what is required of a borrower to subsequently cure a default, review of other statutes demonstrates that curing a default requires payment of all amounts owed at the time of tender. Rhode Island's Default, Notice, Right to Cure, Reinstatement section under The Rhode Island Automobile Repossession Act provides that a "consumer may cure the default by tendering the amount of all unpaid sums due at the time of tender, including any unpaid delinquency or default charges, but without additional security deposit or prepayment of period payments not yet due. Cure restores the rights of the lessor or secured party and consumer under the automobile loan or lease agreement as if the default had not occurred." *R.I. Gen. Laws § 6-51-3* (2019). In other words, a borrower who seeks to cure the default on an automobile loan in Rhode Island must pay the entire amount due at tender.

Other states have legislated requirements for curing a mortgage that demand tender of the entire amount due at payment. *See, e.g.* Cal. Civ. Code § 2924c (California); D.C. Code § 42-815.01 (District of Columbia);  41 P.S. § 404 (Pennsylvania); N.J. Stat. § 2A: 50-57; ORS § 93.920 (Oregon); Rev. Code Wash. (ARCW) § 61.30.010 (Washington). For example, the State of Washington's definition of "cure the default" or "cure" includes the requirement that the borrower "make all payments of money required of the purchaser by the contract which first become due after the notice of intent to forfeit is given and are due when cure is tendered." *Rev. Code Wash. (ARCW) § 61.30.010.* Statutes that define or interpret cure following a default require a borrower to not only pay the amount in delinquency but also to make every payment due and owing on a loan at the time a cure payment is tendered so that the loan is reinstated. These statutes are consistent with the bankruptcy court holdings discussed above, in that cure

5

requires payment of all amounts due and owing and restoration of the loan to its position prior to default.

### D. The Bankruptcy Record Demonstrate that Plaintiffs did not Cure the Default

Plaintiffs argue a date of default after May of 2013, and eligibility for mediation, by claiming that payments they made during the pendency of their Chapter 13 bankruptcy petition adjusted their due date of default to May of 2014 and thus beyond statutory effective date. The Plaintiffs, however, cannot establish cure. Instead, the record of Plaintiffs' bankruptcy demonstrates their failure to cure the default through the Chapter 13 plan. The United States Bankruptcy Court for the District of Rhode Island confirmed a Chapter 13 plan for Plaintiffs as of November 8, 2012. (Order Confirming Chapter 13 Plan, *Exhibit A*.)[2] The confirmed plan required Plaintiffs to make contractual monthly payments to Ocwen at $1,387 per month outside of the plan. (Chapter 13 Plan, *Exhibit B* at p. 3.) The plan also required Plaintiffs to pay a total pre-petition arrearage estimated at $30,000 out of their 60 months of payments made to the trustee at $620 per month. (*Id.* at pp. 3-4.) Those $620 per month payments only applied to the pre-petition arrearage and not to any additional amount owed to Plaintiffs' secured creditor. (*Id.*) Finally, the Chapter 13 plan provided that all amounts (pre- and post-petition payments) were required from Plaintiffs in order to reinstate:

> If Debtor pays the amount(s) specified in section (4) (above), while making all required Post-Petition Payments (see below), Debtor's mortgage will be reinstated according to its original terms, extinguishing any right of the Secured Creditor to recover any amount alleged to have arisen prior to the filing of Debtor's petition.

(*Id.* at p. 4.)

---

[2] This Court may consider matters of public record in resolving motions to dismiss under Fed. R. Civ. P. 12(b)(6) including documents from prior court proceedings for which a court may take judicial notice. *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008); *see also Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990); *Pemental v. Wells Fargo Bank, N.A.*, C.A. No. 14-494, 2015 U.S. Dist. LEXIS 120571 at *12 (D.R.I. Sept. 4, 2015); *Rosario v. McElroy*, C.A. No. 15-060, 2015 U.S. Dist. LEXIS 32563 at 6 fn. 3 (Feb. 23, 2015).

1016248\305067410.v1

In October of 2017, the trustee filed and served a Notice of Final Cure Payment indicating that payment of $38,975.89 to Ocwen as part of the allowed pre-petition arrearage and informed the court that the monthly ongoing payments were paid directly by Plaintiffs. (Notice of Final Cure, *Exhibit C*.) On October 13, 2017, counsel for Plaintiffs' creditor mortgagee, Deutsche Bank National Trust Company, as Trustee for GSAMP Trust 2005-WMC1, filed a response to the Notice of Final Cure acknowledging the full payment required to cure the pre-petition default payments but informing the court that Plaintiffs were not current on all post-petition payments, that Plaintiffs owed $94,436.41, and that Plaintiffs remain contractually obligated for payments that first became due on August 1, 2012. (Response to Final Cure Payment, *Exhibit D*.) The Bankruptcy Court acknowledged the dispute over final cure and required the Plaintiffs to file a motion for determination of final cure. (Notice Regarding Motion, *Exhibit E*.) The docket reflects that Plaintiffs never filed a motion to determine final cure on payments.

Plaintiffs have admitted that they did not make all post-petition payments required under the Chapter 13 plan to cure the default. In this case, Plaintiff Heather Bradbury attests to the fact that Plaintiffs stopped making regular monthly post-petition payments to Ocwen as of May 1, 2014. (Plaintiffs' Affidavit, ECF No. 7 at ¶ 4.) In other words, during the time in which the Plaintiffs were sending regular monthly payments under the plan to the Trustee in order to satisfy the pre-petition arrearage (from November of 2012 up to October of 2017), the Plaintiffs stopped making their post-petition payments.

There is no dispute here that Plaintiffs failed to reinstate the mortgage under the terms and conditions of their Chapter 13 plan. The Bankruptcy Court record conclusively demonstrates that Plaintiffs never fully restored the loan to its pre-default position. Instead, the record of the

1016248\305067410.v1

bankruptcy court, coupled with Plaintiffs' Affidavit submission in this case, demonstrate that more than three years before the Plaintiffs made all payments to satisfy the pre-petition arrearage, Plaintiffs stopped making post-petition payments. Whether this Court considers federal bankruptcy law, state law, or the Plaintiffs' Chapter 13 plan itself, there are not plausible grounds under which the Plaintiffs can establish cure of the September, 2012 default because they cannot demonstrate reinstatement of the loan.

## E. Ocwen's Acceptance of Pre-Petition Payments does not Waive the Right to Enforce the September, 2012 Default

Plaintiffs may argue that Ocwen's acceptance of the pre-petition payments somehow amounts to a waiver of the right to continue to assert default or a default date from September of 2012. Putting aside the fact that Plaintiffs have no basis to establish cure of the default as a matter of law, the mortgage contract rejects any such waiver. According to Paragraph 12 of the Mortgage:[3] "Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise the exercise of any right or remedy." (ECF No. 1-1 at p. 9.) Acceptance of trustee payments, even to the full repayment of all pre-petition arrearages, does not waive the Defendants' right to pursue foreclosure on the initial September of 2012 default. Instead, Paragraph 12 expressly reserves the Defendants' rights to pursue foreclosure as a remedy despite having accepted these partial payments. (*Id.*)

---

[3] The Mortgage does not define or interpret the term "cure" or "cure the default." Instead, Paragraph 22 of the Mortgage provides that the Lender will provide the action to cure upon the Borrower's default. (ECF No. 1-1.)

## III. CONCLUSION

The Bankruptcy Code provided Plaintiffs with an extraordinary measure of relief. By operation of the code alone, Plaintiffs were afforded an automatic stay of foreclosure. 11 U.S.C. § 362. The Plaintiffs' Chapter 13 petition provided them with an available plan to cure the default and reinstate the mortgage, but curing the default required completion of the entire Chapter 13 plan and not just payment of the pre-petition debt. 11 U.S.C. § 1332. For the reasons discussed above, Plaintiffs did not cure the default, the date of default remained September of 2012, and Defendants were not required to offer mediation.

Respectfully submitted,

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for GSAMP TRUST 2005-WMC1; and OCWEN LOAN SERVICING, LLC,

By Their Attorneys,

/s/ Samuel C. Bodurtha
Samuel C. Bodurtha, Bar No. 7075
Ethan Z. Tieger, Bar No. 9308
HINSHAW & CULBERTSON LLP
56 Exchange Terrace, Suite 5
Providence, RI 02903
Telephone: (401) 751-0842
Facsimile: (401) 751-0072
sbodurtha@hinshawlaw.com
etieger@hinshawlaw.com

Dated:      January 31, 2020

## CERTIFICATE OF SERVICE

I, Samuel C. Bodurtha, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on January 31, 2020.

1016248\305067410.v1

*/s/ Samuel C. Bodurtha*

Samuel C. Bodurtha

1016248\305067410.v1