UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RAYMOND C. BRADBURY and | : | |
| HEATHER A. BRADBURY, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 18-690WES |
| | : | |
| DEUTSCHE BANK NATIONAL | : | |
| TRUST COMPANY, as Trustee for | : | |
| GSAMP TRUST 2005-WMC1, | : | |
| and OCWEN LOAN SERVICING LLC, | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

Now pending before the Court is the motion to dismiss the complaint of Plaintiffs Raymond C. Bradbury and Heather A. Bradbury ("the Bradburys") filed by Defendants Deutsche Bank National Trust Company ("DB") and Ocwen Loan Servicing LLC ("Ocwen"). Based on Fed. R. Civ. P. 12(b)(6), Defendants argue that the Bradburys' claim – grounded in R.I. Gen. Laws § 34-27-3.2, which requires that some mortgagees must send a notice of mediation before foreclosing – fails because the mediation requirement is not applicable to the mortgage in issue, and that the remaining allegations fail to state a plausible claim for relief. Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants also seek dismissal of claims that are now moot or lack any injury-in-fact because the Court does not have jurisdiction to entertain them.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Since June 9, 2005, the Bradburys have owned and resided at 61 Lafayette Street, West Warwick, Rhode Island. On that date, they entered into a mortgage based on a loan secured by their residence. ECF No. 1 ¶¶ 1-2 ("Compl. ¶¶ 1-2") & ECF No. 1-1 ("Ex. A") ("Mortgage"). The "Lender" referenced in the Mortgage was WMC Mortgage Corporation ("WMC"), while Mortgage Electronic Registration Systems, Inc. ("MERS"), is named as the mortgagee, "acting

solely as a nominee for Lender and Lender's successors and assigns." Ex. A at 2. The Mortgage is now owned by DB; during the relevant period, Ocwen was the loan servicer. See Compl. ¶¶ 9-10.

The Mortgage contains Paragraph 22, which addresses acceleration and remedies. Id. ¶ 17. Paragraph 22 references Rhode Island's Statutory Power of Sale pursuant to R.I. Gen. Laws § 34-11-22 ("Statutory Power of Sale").[1] In relevant part, it states:

> If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE.

Compl. ¶ 17. The "Transfer of Rights in the Property" section of the Mortgage contains the sentence that sets out the "grant" to MERS as nominee for the Lender and the Lender's successors and assigns, but this sentence does not mention the Statutory Power of Sale, although it does secure the performance of all covenants and agreements under the Mortgage, including those in Paragraph 22. Id. ¶ 7. According to the complaint, a "standard Fannie Mae/Freddie Mac Uniform Instrument" form applicable to Rhode Island differs from the Mortgage in that it references the Statutory Power of Sale in two places, both in the "grant" sentence in the "Transfer of Rights in the Property" section and in Paragraph 22.[2] Id. ¶ 5 & ECF No. 1-2 ("Ex. B"). Therefore, the complaint alleges that the "statutory power of sale was not granted in the mortgage." Compl. ¶ 19.

---

[1] Rhode Island permits both judicial foreclosures and nonjudicial foreclosures. The latter, which are more common, are allowed when the language encompassing the "Statutory Power of Sale" is incorporated by reference in the mortgage pursuant to R.I. Gen. Laws § 34-11-22.

[2] The footer on this form, which is attached to the complaint as Exhibit B, indicates that it is a hodgepodge, with some of the pages from a form dated "1/01," while other pages are dated "1/01 (rev. 10/16)." Defendants argue that Exhibit B is a 2016 form and irrelevant to the Mortgage, which was signed in 2005. The Bradburys have not explained this discrepancy.

The complaint is silent regarding when and how the Bradburys found themselves in default of the Mortgage, nor does it mention that, from June 20, 2012 (the filing date of the petition), through December 6, 2017, when the final Order issued, they were in a Chapter 13 bankruptcy pending in the District of Rhode Island. In re Raymond C. Bradbury and Heather A. Bradbury, BK No. 12-12104 ("Chapter 13 Bankruptcy"). Skipping these facts, the pleading alleges that the Bradburys got a Notice of Default from Ocwen on April 30, 2018, which states that the "entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before 06/06/2018." Compl. Ex. D at 3 ("Notice of Default") (emphasis supplied). The Bradburys allege that this language is inconsistent with Paragraph 22, which requires that the notice of default must specify the "date . . . by which the default must be cured." Compl. ¶¶ 22-24.

Following the Notice of Default, on November 7, 2018, the Bradburys got a Notice of Intention to Foreclose on or after December 31, 2018. Compl. Ex. C. The Bradburys allege that they did not receive the Notice of Mediation required by R.I. Gen. Laws § 34-27-3.2(d) prior to this initiation by DB of the nonjudicial foreclosure process. Compl. ¶ 29. The pleading does not mention that, pursuant to R.I. Gen. Laws § 34-27-3.2(o)(2), the notice of mediation requirement is applicable only to mortgages with a "date of default" after May 16, 2013. See also R.I. Gen. Laws § 34-27-3.2(c)(1) (pre-May 16, 2013, default must be "failure [which] has not been subsequently cured"). The complaint contains no facts to support the proposition that R.I. Gen. Laws § 34-27-3.2 is applicable to the Mortgage and it mentions this deficiency (no Notice of Mediation) in passing as a reason why the then-pending foreclosure was improper; it does not assert any injury caused by the lack of a Notice of Mediation. Compl. ¶ 29.

With the foreclosure sale imminent, the Bradburys filed their complaint on December 21, 2018. Count I alleges that DB breached the Mortgage, *inter alia*,[3] by scheduling a nonjudicial foreclosure sale for a Mortgage that does not properly invoke the Statutory Power of Sale by sending a Notice of Default that omits the date by which the default could be cured, and by failing to send the Bradburys a pre-foreclosure Notice of Mediation. Count II seeks to enjoin both Defendants from proceeding with the nonjudicial foreclosure. Count III is brought pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638, based on DB's failure to send the Bradburys monthly statements since April 19, 2018, as required by 12 C.F.R. § 1026.41. Count IV invokes the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; it charges Ocwen with the conduct related to sending the wrongful Notice of Foreclosure and alleges that Ocwen contacted the Bradburys by phone a total of five times in April and May 2018 despite its awareness that they had engaged an attorney, as well as that these calls were made to compel payments under the false threat of foreclosure that was not legally permitted. Compl. ¶¶ 78-81.

The complaint was accompanied by a motion for preliminary injunction. ECF No. 2. The parties' many filings in connection with the motion to enjoin the then-pending foreclosure introduced additional facts that fill in holes in the complaint. Defendants filed the undisputed public record from the applicable land evidence file establishing the assignment of the Mortgage by MERS (acting as nominee for WMC) to DB and pointed out that the Bradburys were repeatedly advised of the availability of financial counseling services in various Notices sent

---

[3] Count I also alleges breach of contract based on an array of other theories, such as the lack of a signature by a "person" on the Notice of Foreclosure and the failure to send any notice of default (while inconsistently challenging the content of the Notice of Default that admittedly was sent). Only those listed in the text are argued in the Bradburys' opposition to the motion; therefore, the others are deemed abandoned. Vargas-Colon v. Fundacion Damas, Inc., 864 F.3d 14, 24 (1st Cir. 2017) (argument not developed in brief need not be considered); see Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 612 (1st Cir. 2000) (holding that by failing to sufficiently raise an argument at summary judgment, party has waived it); Wai Feng Trading Co. Ltd v. Quick Fitting, Inc., C.A. No. 13-033WES, 2018 WL 6605927, at *19 n.30 (D.R.I. Dec. 17, 2018), adopted, 2019 WL 6827448 (D.R.I. Sept. 16, 2019). I recommend that they be dismissed.

prior to the scheduled foreclosure in 2018. ECF No. 5-1 at 2. Defendants also represented to the Court that "Ocwen's records identify a default date of September 1, 2012"; accordingly, pursuant to R.I. Gen. Laws § 34-27-3.2(o) (mediation requirement not applicable if uncured default date "is on or before May 16, 2013"), they argued that the Notice of Mediation prerequisite to foreclosure is not applicable to the Bradburys' Mortgage. ECF No. 5 at 9. In response, Heather Bradbury filed an affidavit averring that the Bradburys' "last mortgage payment" was made on April 1, 2014; they supported this averment with an unauthenticated and unexplained "Payment History" that their attorney received from Ocwen. ECF No. 7 ¶ 4. Defendants countered with the undisputed public record of the Bradburys' Chapter 13 Bankruptcy, which confirms that the uncured date of default is September 1, 2012. ECF Nos. 12-1 to 12-5.

On February 26, 2019, the parties advised the District Court that the pending foreclosure had been canceled, thereby mooting the motion for preliminary injunction. Text Order of Feb. 26, 2019.

The next event relevant to the pending motion to dismiss occurred on June 19, 2019. On that day, on behalf of DB, the new loan servicer for the Mortgage sent a Notice of Mediation to each of the Bradburys. ECF No. 15-2 ("Notices of Mediation"). Consistent with the default date reflected in the Bankruptcy Court public record, these Notices each recite: "Date of Default: September 1, 2012." Id. at 2, 9. Approximately one week later, Defendants filed the pending motion to dismiss. In addition to arguing that the complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), it also relies on mootness based on the Notices of Mediation sent on June 19, 2019.

After the motion to dismiss was referred to me for report and recommendation, I held a hearing on January 10, 2020. At the hearing, the Bradburys acknowledged having received the

5

June 19, 2019, Notices of Mediation but announced that these Notices were legal nullities to which the Bradburys had not bothered to respond because Rhode Island's mortgage coordinator had taken the position that R.I. Gen. Laws § 34-27-3.2 is not applicable in light of the default date (September 1, 2012), which is reflected on the face of the Notices.[4] Mindful of this development, the Court allowed Defendants additional time to supplement the argument regarding the Notice of Mediation requirement, including to determine whether to send a new Notice of Mediation with a revised default date or to rest on the default date that appears in the Bankruptcy Court public record. With a complaint that is silent on the date of default and an affidavit with a date of default that appears to be based on nothing more than an unauthenticated and unexplained Ocwen document, the Court directed the Bradburys to respond and allowed them additional time to do so, urging them particularly to address the uncured default date established by the Bankruptcy Court public record.

Defendants timely filed their supplemental memorandum on January 31, 2020. The date set for the Bradburys' filing (March 2, 2020) came and went, and they provided nothing. On March 13, 2020, Defendants advised the Court that they would not try to issue a new Notice of Mediation, but instead would rest on the uncured default date of September 1, 2012, reflected in the Bankruptcy Court public record.

## II. STANDARD OF REVIEW

To avoid foundering in the face of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a pleading must allege a plausible entitlement to relief that gives the opposing parties fair notice of

---

[4] As the parties were advised during the hearing, while not pertinent to (and not considered in connection with) the pending motion to dismiss, the Court was struck by this representation. That is, the Bradburys had been aware since June 2019 of Defendants' willingness to mediate, yet had done nothing for almost seven months to alert Defendants to the unwillingness of the Rhode Island mortgage coordinator to act; nor, despite sophisticated counsel on both sides, have the Bradburys asked the Court for a referral to court-annexed mediation. In short, at least as of the date of the hearing before me, it appeared that the Bradburys had no interest in mediation and were relying on R.I. Gen. Laws § 34-27-3.2 as a technical impediment that prevents DB from foreclosing.

the claim and the grounds on which it rests. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The plausibility inquiry requires the court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). The Court must determine whether the well-pled facts, taken as true, are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1) based on the lack of subject matter jurisdiction, the Court should apply a standard of review "similar to that accorded a dismissal for failure to state a claim under" Fed. R. Civ. P. 12(b)(6). Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012). However, "[w]hile the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

### III. ANALYSIS

#### A. Count I Breach of Contract Claim Based on Lack of Notice of Mediation

The Bradburys' complaint alleges that Defendants breached the Mortgage contract by failing to send a Notice of Mediation pursuant to R.I. Gen. Laws § 34-27-3.2 before attempting to initiate a nonjudicial foreclosure. The complaint mentions the mediation requirement only in paragraph 29, which states that a Notice of Mediation was a prerequisite to the pending foreclosure because it was based on the Statutory Power of Sale. In reliance on their own records and, for Fed. R. Civ. P. 12(b)(6) purposes, on the Bankruptcy Court's public filings in

the Bradburys' Chapter 13 Bankruptcy,[5] which establish September 1, 2012, as the first uncured date of default, Defendants have consistently asserted that § 34-27-3.2 is not applicable; however, they also tried to moot the mediation-based claim by sending Notices of Mediation on June 19, 2019. When this effort turned into a Catch 22,[6] Defendants doubled back to the core problem with the Bradburys' mediation-based claim. With an uncured default beginning on September 1, 2012, a matter of public record in the Bankruptcy Court, and the Bradburys having now been afforded a substantial opportunity to rebut the public record yet having failed to do so, Defendants contend that the Bradburys' mediation-based claim fails because § 34-27-3.2 is not applicable to the Mortgage. Therefore, they ask the Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all allegations based on the failure to send a Notice of Mediation.

Since 2013, Rhode Island law has required certain mortgagees to send a mediation notice to the mortgagor before foreclosing. Fontaine v. US Bank Nat'l Ass'n, No. PC 2015-0216, 2015 WL 2449536, at *1 (R.I. Super. Ct. May 15, 2015). The statute mandates that a notice must be sent advising that the mortgagee will not proceed with a nonjudicial foreclosure without first participating in a mediation conference. Id. at *2. In response to the notice, the Rhode Island mediation coordinator sets up and conducts the mediation conference and certifies the mortgagee's compliance. R.I. Gen. Laws § 34-27-3.2(c)(5-6), (d)(3), (f), (h). The mediation notice is supposed to be sent within 120 days after the default, or within 60 days after the date of

---

[5] The First Circuit has repeatedly held that a Fed. R. Civ. P. 12(b)(6) analysis may include consideration of official public records. In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

[6] Catch 22 is the eponymous phrase that was humorously animated by Joseph Heller's 1961 novel. It refers to a situation in which a desired outcome or solution is impossible to attain because of a set of inherently illogical rules or conditions. See Oak Knoll Health Care Ctr. v. Leavitt, Civil Action No. 08-12051-DPW, 2011 WL 4443621, at *3 (D. Mass. Sept. 22, 2011). Here, Defendants were blocked from foreclosing, *inter alia*, by the Bradburys' argument based on their failure to send a Notice of Mediation because of the default date, yet their attempt to moot the argument by sending a Notice of Mediation was ineffective because the default date.

8

the release of the loan from the bankruptcy protection of an automatic stay. Id. § 34-27-3.2(d)(1), (4)(i). The public purpose of the mediation notice requirement is "enshrined in the statute itself," which declares that "the chances of achieving a positive outcome for homeowners and lenders will be enhanced." Fontaine, 2015 WL 2449536, at *5 (quoting R.I. Gen. Laws § 34-27-3.2(b)); see id. ("The mediation statute simply requires Defendants to send a mediation notice in order to attempt to achieve a resolution prior to foreclosure. If a resolution cannot be reached or Plaintiffs fail to respond to the notice, then Defendants can proceed with foreclosure."). The notice of mediation requirement is a statutory prerequisite to nonjudicial foreclosure. R.I. Gen. Laws § 34-27-3.2. The parties agree that the version[7] of R.I. Gen. Laws § 34-27-3.2 applicable to this case does not require a notice of mediation if the "date of default under the mortgage is on or before May 16, 2013." Id. § 34-27-3.2(o)(2). "Default" is defined as "the failure of the mortgagor to make a timely payment of an amount due under the terms of the mortgage contract, which failure has not been subsequently cured." Id. § 34-27-3.2(c)(1).

The public record in the Bankruptcy Court for the District of Rhode Island establishes that the Bradburys filed their Chapter 13 bankruptcy petition on June 20, 2012, triggering the automatic stay and preventing foreclosure. Chapter 13 Bankruptcy, ECF No. 1; see 11 U.S.C. § 362. They filed their Plan on July 10, 2012. ECF No. 24 Ex. A. According to the Plan, the Bradburys were required pay the pre-petition arrearage related to the Mortgage to the Bankruptcy Trustee, while post-petition payments were to be made directly to Ocwen outside of the Plan as they became due. Id. Ex. B; see In re Nosek, 544 F.3d 34, 45-46 (1st Cir. 2008)

---

[7] The General Assembly has repeatedly amended R.I. Gen. Laws § 34-27-3.2. See Wilmington Sav. Fund Soc., FSB v. Johnson, No. PC-2018-0576, 2019 WL 961938, at *2-3 (R.I. Super. Ct. Feb. 21, 2019). Nonetheless, during the relevant timeframe in this case, there were no amendments that substantively impact the Bradburys' claims.

9

(Chapter 13 permits debtor to split off mortgage payments into two separate claims, to cure pre-petition default while paying currently as agreed).

The Bradburys did make the payments to cure the pre-petition arrearage, which the Trustee confirmed in the Notice of Final Cure Payment filed on October 4, 2017. ECF No. 24 Ex. C. However, beginning soon after the filing of the bankruptcy petition, with the payment due on August 1, 2012, the Bradburys stopped making the ongoing payments in connection with the Mortgage as they became due. On October 13, 2017, DB advised the Bankruptcy Court in its Response to Final Cure Payment that the Bradburys had built up a substantial uncured post-petition default beginning as of September 1, 2012. Id. Ex. D (averring under penalty of perjury regarding uncured arrearage of payments due on August 1, 2012, through October 1, 2017). This Response was served on the Bradburys on October 13, 2017. Id. On October 30, 2017, the Clerk of the Bankruptcy Court directed the Bradburys to file any dispute with DB's Response. Id. Ex. F. They filed nothing. And when challenged by these public records in connection with the current motion to dismiss, the Bradburys provided nothing to dispute the authenticity or accuracy of what they demonstrate; importantly, their complaint also remains silent – there is nothing in the pleading regarding what they allege to be the earliest uncured "date of default."[8] The final order ending the Bradburys' Chapter 13 Bankruptcy was filed on December 6, 2017.

---

[8] A year after forgoing the opportunity to dispute the uncured default date of September 1, 2012, in bankruptcy court, in connection with their motion for preliminary injunction in this case, the Bradburys filed an inconsistent affidavit asserting that their next payment was due for May 1, 2014. ECF No. 7 ¶ 4. Aside from the reality that this assertion is omitted from the complaint and that it appears to be derived from an unauthenticated, unexplained Ocwen document, the Bradburys may well be estopped from relying on it by the inconsistent position they took a year before in the bankruptcy court. See Puig Martinez v. Novo Nordisk, Inc., 585 B.R. 655, 657 (D.P.R. 2018) (non-disclosure to the bankruptcy court can judicially estop a party in subsequent federal case); MMG Ins. Co. v. Podiatry Ins. Co. of Am., 263 F. Supp. 3d 327, 337 (D. Me. 2017) ("[E]stoppel, in its purest form, . . . rests simply on a rule of law which forecloses one from denying his own expressed or implied admission which had in good faith been accepted and acted upon by another.").

Chapter 13 Bankruptcy, ECF No. 41. Almost five months later (on April 30, 2018), Ocwen sent the Notice of Default. Compl. Ex. D.

These public records are pellucid – while the Bradburys "cured" the arrearage that had built up before they filed the Chapter 13 Bankruptcy on June 20, 2012, they did not pay the amounts that were due and owing beginning with the August 1, 2012, payment. Therefore, there was an uncured default beginning on September 1, 2012. See In re Litton, 330 F.3d 636, 644 (4th Cir. 2003) ("Cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts."). Accordingly, the Court's analysis can stop right here – R.I. Gen. Laws § 34-27-3.2 is not applicable to the Mortgage because the uncured "date of default" is prior to May 16, 2013.[9] DaCosta v. Nationstar Mortg. LLC, C.A. No. 15-542M, 2016 WL 3635985, at *1-2 (D.R.I. June 24, 2016) (dismissing claim based on lack of mediation because mediation statute not applicable when default was "before May 16, 2013"). Any claim based on the proposition that § 34-27-3.2 was or is applicable should be dismissed.[10]

B.     Remaining Claims in Count I – Breach of Contract

The Bradburys' remaining breach of contract claims may be given short shrift.

---

[9] With no claim to be mooted, the Court need not consider Defendants' Fed. R. Civ. P. 12(b)(1) argument that the June 19, 2019, Notice of Mediation mooted any claim based on the lack of a Notice of Mediation.

[10] Because the Notice of Mediation claim is alleged as a breach of contract, it is also subject to Fed. R. Civ. P. 12(b)(6) dismissal because the complaint has no factual allegation permitting the inference either that the Mortgage contractually mandated a Notice of Mediation before foreclosure, or that the Bradburys were damaged by the lack of a Notice of Mediation. See Dan-Harry v. PNC Bank, N.A., C.A. No. 17-136WES, 2018 WL 5044235, at *6 (D.R.I. Oct. 17, 2018), adopted, 2019 WL 1253481 (D.R.I. Mar. 18, 2019) (mortgage breach of contract claim may be based on breach of unambiguously incorporated HUD regulations but remains subject to foundational principle that a plaintiff must not only prove the existence and breach of a contract, but also must prove that the breach caused him damage) (appeal pending); Rourk v. Bank of Am. Nat'l Ass'n, No. 4:12-CV-42 (CDL), 2013 WL 5595964, at *6 (M.D. Ga. Oct. 11, 2013) (summary judgment granted because plaintiff "has not established that such a failure [of face-to-face meeting] caused her any damages"); Petrarca v. Fidelity & Cas. Ins. Co., 884 A.2d 406, 410 (R.I. 2005) (plaintiff must not only prove the existence and breach of a contract, but also must prove that the breach caused him damage).

11

First, they argue that the Mortgage's failure to reference the "Statutory Power of Sale" twice in the same instrument means that it was a breach for Defendants to proceed with a nonjudicial foreclosure. To support their claim that the Mortgage's recitation in Paragraph 22 that the Lender "may invoke the STATUTORY POWER OF SALE" is not sufficient to invoke the Statutory Power, they contend that the Mortgage needed to embed the formulaic phrase in the "grant" sentence or the option of nonjudicial foreclosure is not available.

This proposition is contrary to the operative statute, R.I. Gen. Laws § 34-11-22, which provides simply that the "Statutory Power of Sale" may be "incorporated in any mortgage by reference." Making plain that there is no magic formula, R.I. Gen. Laws § 34-11-13 specifies that instruments may be flexibly drafted in that any term that is "incorporat[ed] by reference" may be included as reflected in statutory forms or by "other methods." See also R.I. Gen. Laws § 34-11-11 (statutory forms "shall be sufficient for their respective purposes" and "may be altered as circumstances require, and the authorization of such forms . . . shall not preclude the use of other forms"). And the statutory form simply has a stand-alone sentence ("This mortgage is made . . . with the statutory power of sale"); it does not embed this language in the "grant" sentence or otherwise expressly "grant" the Statutory Power to the lender or mortgagee. R.I. Gen. Laws § 34-11-12(4). The Rhode Island General Assembly has expressly established the legislative purpose of "avoiding the unnecessary use of words in deeds or other instruments relating to real estate" and lists R.I. Gen. Laws § 34-11-22 (the statutory power of sale) as an enactment to be interpreted consistent with that purpose. R.I. Gen. Laws § 34-11-14.

The Bradburys' hyper-technical position is contrary to all of these state enactments. Nor is there judicial support for the argument; the Court has reviewed all of the cases they cite to buttress it; none contain the requisite holding. For example, <u>Bucci v. Lehman Bros.</u>, 68 A.3d

1069 (R.I. 2013), analyzes a mortgage that happened to have the Statutory Power of Sale embedded in the "grant" sentence, but Bucci does not hold that this format is the only way that the Statutory Power of Sale may be incorporated by reference. Id. at 1073-74. To the contrary, Bucci emphasizes that R.I. Gen. Laws § 34-11-22 "was enacted for the purpose of establishing a uniform power of sale provision that could be referred to with ease." Id. at 1085 (emphasis supplied).

I recommend that the Court reject this argument and dismiss the Bradburys' claims to the extent that they are grounded in the proposition that Defendants could not and cannot proceed with a nonjudicial foreclosure because the Mortgage failed to invoke the Statutory Power of Sale.

The Bradburys' other contract argument makes even less sense. They attack the language in the Notice of Default – "on or before 06/06/2018" – as failing to provide the contractually mandated "date . . . by which the default must be cured." Compl. Ex. A at 12. They argue that, although this phrase clearly does specify a date ("06/06/2018"), it also set a range leading up to the date and therefore is inconsistent with Paragraph 22 of the Mortgage. Their argument omits the very next phrase in Paragraph 22, which specifies that it is the "failure to cure the default on or before" this specific "date" that may result in acceleration. Id. As Defendants point out, if the Bradburys' argument were sustained, it would mean that a mortgagee's communications with the mortgagor can be found to be in breach even though the mortgagee conformed to the language of the mortgage document, as courts have consistently required. See, e.g., In re Demers, 511 B.R. 233, 238 (Bankr. D.R.I. 2014) (paragraph 22 requires notice of "right to bring a court action" and notice must conform to that language); Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213, 1222 (Mass. 2015) (requirement is that notice must conform to language of paragraph 22).

13

I find that the Bradburys' Notice of Default is not tainted by the deficiency that the Court condemned in Martins v. Federal Housing Finance Agency, 214 F. Supp. 3d 163, 169-70 (D.R.I. 2016), where the notice lacked any date at all. The Bradburys' Notice of Default has a specific date as Paragraph 22 required. The Bradburys' claim based on the alleged lack of a specific date should be dismissed.

C. Plausibility of Count II – Injunctive Relief

Count II became moot when the pending foreclosure was canceled. Pursuant to Fed. R. Civ. P. 12(b)(1), it should be dismissed. Emile v. Wells Fargo Bank, N.A., C.A. No. 15-077-M-LDA, 2019 WL 2436399, at *2 (D.R.I. June 11, 2019); Nash v. GMAC Mortg., LLC, No. CA 10-493S, 2011 WL 2470645, at *13 (D.R.I. May 18, 2011), adopted, 2011 WL 2469849 (D.R.I. June 20, 2011).

D. Plausibility of Count III – TILA

The Bradburys' principal TILA claim is based on DB's failure to send monthly statements after the Bradburys received the Notice of Default. Whether or not the statements were required to continue, this allegation fails pursuant to Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549-50 (2016),[11] because the Bradburys have not alleged any injury-in-fact. See Viera v. Bank of New York Mellon, C.A. No. 17-0523-WES-PAS, 2018 WL 4964545, at *6 (D.R.I. Oct. 12, 2018) (dismissing claim based on wrongful failure to send monthly statements because

---

[11] Somewhat illogically, the Bradburys argue that their failure to plead injury-in-fact should be ignored because this case was removed to this Court from the Superior Court; accordingly, they contend that Spokeo should not be applied to their TILA (or FDCPA) claims. This makes no sense for two reasons. First, the case was not removed to this Court by Defendants; the Bradburys initiated this federal action of their own volition by filing the complaint and preliminary injunction motion. And second, Spokeo holds that the Article III requirement of a case or controversy means that courts, whether state or federal, lack jurisdiction to entertain claims based on hypothetical or technical violation of various federal statutes, including TILA and FDCPA, unless the claimant presents a real controversy based on having experienced an actual injury-in-fact. 136 S. Ct. at 1549-50. And the Twombly/Iqbal minimal pleading requirements apply to all cases pending in the federal court, whether or not removed from state court. Reilly v. Cox Enters., Inc., No. CA 13-785S, 2014 WL 4473772, at *3 (D.R.I. Apr. 16, 2014).

14

"Plaintiff has not alleged how Defendants' failure to send monthly mortgage statements has caused him any injury other than attorneys' fees and the costs of prosecuting his TILA claim") (citing Spokeo, 136 S. Ct. at 1550); Osburn v. Ocwen Loan Serv. LLC, Case No. 1:18-cv-00310-LJO-SAB, 2018 WL 3093494, at *11 (E.D. Cal. June 22, 2018) ("Plaintiff[s] cannot allege any harm due to the failure to provide mortgage statements once the notice of default was filed."). Similarly, to the extent that the Bradburys complain of a TILA violation based on fees arising from a "wrongful" foreclosure attempt, they fail to state a plausible claim because, with a Mortgage that properly invoked the Statutory Power of Sale, a properly worded Notice of Default and no need for a Notice of Mediation, there was no "wrongful" attempt to foreclose. Otherwise, Count III contains only the vague and conclusory allegations that the Bradburys "have . . . incurred actual damages, costs and legal fees," Compl. ¶ 68, with no facts to establish the foundational requirement that DB did something violative of TILA that caused them to experience an injury-in-fact. Pemental v. Bank of New York Mellon, C.A. No. 16-483S, 2017 WL 3279015, * 7-8 (D.R.I. May 10, 2017, adopted, 2017 WL 3278872 (D.R.I. Aug. 1, 2017). Based on these deficiencies, most of Count III fails to clear the constitutional bar established by the United States Supreme Court in Spokeo, 136 S. Ct. at 1549-50, while the remainder fails to state a plausible claim for relief.

I recommend that the Court dismiss Count III as crafted, with leave to amend within thirty days of the Court's adoption of this report and recommendation to assert a viable TILA claim based on an injury-in-fact, if the Bradburys have one. See Kamal v. J. Crew Grp., Inc., 918 F.3d 102, 119 (3d Cir. 2019) (when case dismissed for lack of standing, dismissal is without prejudice); Pemental, 2017 WL 3279015, at *8 (Spokeo-based dismissal of TILA claims with leave to amend).

E.  Plausibility of Count IV – FDCPA

Count IV, based on FDCPA, has similar deficiencies to those that doom Count III.  This Count is primarily based on Ocwen's actions taken in connection with the initiation of the foreclosure.  With a complaint that fails to articulate any factually supported or legally sound barriers to the nonjudicial foreclosure, these claims fail pursuant to Fed. R. Civ. P. 12(b)(6) because the pending foreclosure was not a "legal action which could not legally be taken," nor did Ocwen's conduct amount to a "false threat of foreclosure."  E.g., Compl. ¶¶ 75, 86.  What remains are a handful of phone calls to the Bradburys "in an attempt to collect a debt despite the fact that [Ocwen] was aware [that he/she] had an attorney."  Id. ¶¶ 78-81.  Apart from the allegation that an Ocwen representative had initiated contact with a person represented by counsel, the complaint is vague and conclusory regarding why these calls are actionable pursuant to FDCPA and how they inflicted any injury-in-fact.  See Compl. ¶¶ 89-90, 93 (alleging that Ocwen's "conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt," Ocwen "employ[ed] an unfair and unconscionable means to collect or attempt to collect the subject debt" and "Plaintiffs have incurred actual damages as a result of the violations of the FDCPA").  Count IV lacks the substance, for example, found in the FDCPA claim asserted in Kowalski v. Seterus, Inc., 2:16-cv-00160-JAW, 2017 WL 79949 (D. Me. Jan. 9, 2017), where the court denied a motion to dismiss because the defendant sent the plaintiff monthly statements suggesting he owed money for a loan on which he had no personal liability, and the defendant had a representative call the plaintiff to tell him they could foreclose on his home if he did not pay the amount due, even though the plaintiff did not owe any amount on the loan and his property had already been foreclosed, leading him to believe that he could lose his

16

current home.  Id. at *17 (defendant also charged plaintiff "over $2,000 for insurance on a property for which he was a non-obligor and non-owner").

Count IV fails both to state a plausible claim based on FDCPA and to meet the Article III requirements highlighted by Spokeo.  The lack of a plausible claim requires dismissal pursuant to Fed. R. Civ. P. 12(b)(6), while the lack of any concrete injury-in-fact allegations requires dismissal pursuant to Fed. R. Civ. P. 12(b)(1).  As with the TILA claims in Count III, I recommend that the Court dismiss Count IV with leave to amend within thirty days of the Court's adoption of this report and recommendation to assert a legally viable FDCPA claim based on an injury-in-fact, if the Bradburys have one.  See Kamal, 918 F.3d at 119; Pemental, 2017 WL 3279015, at *8.

## IV. CONCLUSION

Based on the foregoing, I recommend that the Court grant Defendants' motion (ECF No. 15) to dismiss as follows: the claims in Count I discussed above should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and the remaining claims in Count I that Plaintiffs do not defend should be deemed abandoned and dismissed accordingly; Count II should be dismissed as moot under Fed. R. Civ. P. 12(b)(1); and Counts III and IV should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) due to their failure to sufficiently allege an injury-in-fact, as well as pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a plausible claim, but Plaintiffs should be given leave to amend these Counts within thirty days of the Court's adoption of this report and recommendation.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes

waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 10, 2020