UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RAYMOND C. BRADBURY and<br>HEATHER A. BRADBURY,<br><br>       Plaintiffs,<br><br>v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for GSAMP TRUST 2005-WMC1; and OCWEN LOAN SERVICING, LLC,<br><br>       Defendants. | C.A. No. 1:18-cv-00690-WES-PAS |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO RECOMMENDED DISMISSAL OF THIS CASE**

**I. INTRODUCTION**

Plaintiffs, Raymond C. Bradbury and Heather A. Bradbury ("Plaintiffs"), present 50 pages of theories, claims and assertions, and over 90 pages of exhibits, to challenge the Report and Recommendation to dismiss this case while at the same time disregarding undisputed facts critical to disposition. These undisputed facts include: (1) that Plaintiffs granted their mortgage lender the right to foreclose under the Statutory Power of Sale on execution of the Mortgage; (2) that Plaintiffs were issued a Notice of Default, which matched the required disclosures of Mortgage Paragraph 22; and (3) that Plaintiffs defaulted on the mortgage loan prior to filing for bankruptcy protection in 2012 and never again cured that default. Magistrate Judge Sullivan applied these and other facts to correctly determine that Plaintiffs have failed to establish any grounds to pursue a wrongful foreclosure claims under causes of action for breach of contract, for violation of the Truth In Lending Act, or for violation the Fair Debt Collection Practices Act. In further pursuit of dismissal of this case, Defendants Deutsche Bank National Trust Company,

as Trustee for GSAMP Trust 2006-WMC1 ("DBNTC, as Trustee") and Ocwen Loan Servicing ("Ocwen") (collectively, "Defendants") submit the following response to Plaintiffs' Objection to the Report and Recommendation.

## II. LEGAL ARGUMENT

### A. *Woel v. Christiana Trust* does not Contradict the Report and Recommendation to Dismiss Plaintiffs' Challenge to the Notice of Default.

In *Woel v. Christiana Trust, as Trustee*, SU-2018-347, 2020 R.I. LEXIS 40 at *13-15 (R.I. June 2, 2020), the Rhode Island Supreme Court adopted the Rhode Island Federal Court's decision in *Martins v. Federal Housing Finance Agency*, 214 F.Supp. 3d 163 (D.R.I. 2016), which requires a mortgage lender's strict compliance with the notice requirements in a mortgage. Applying *Martins*, the Rhode Island Supreme Court concluded that the *Woel* Notice of Default failed to strictly comply with Paragraph 22 of the mortgage because the notice did not inform the borrower that he had the right to reinstate the mortgage after acceleration. *Id.* at *7*8, *19-*20. The *Woel* Court's analysis largely mirrored the *Martins* Court's analysis employed to require strict compliance. According to the Rhode Island Supreme Court's decision in *Woel*: (1) as a matter of contract law in the State of Rhode Island, strict compliance with Paragraph 22 disclosures is a condition precedent to acceleration and a valid foreclosure sale; (2) strict compliance with notice requirements is especially important given that Rhode Island is a nonjudicial foreclosure state; (3) strict compliance with notice requirements prevents mortgagees from accelerating and foreclosing without first providing a notice of default that adequately informs the mortgagor of his or her rights under the mortgage contract; and (4) strict compliance is essential to ensuring that mortgagors are fully informed of their rights and will not be misled by a default notice provided by a mortgagee. *Id.* at *14-*15.

Plaintiffs mischaracterize the outcome and import of *Woel* to argue error in the Magistrate's recommendation to dismiss Plaintiffs' Breach of Contract Claim in Count I. To challenge the amount owed in Defendants' April 30, 2018 Notice of Default, Plaintiffs claim that the *Woel* Court "noted that expenses charged to the mortgage loan account are not the proper subject of a Default Notice, pursuant to Paragraph 22." (Objection to Report and Recommendations ("Objection") ECF No. 29-1 at p. 14.) The Rhode Island Supreme Court did not reach any such holding much less provide such a notation. Instead, Plaintiffs mischaracterize a portion of the Rhode Island Supreme Court's decision, which compared Paragraphs 19 and 22 on review of defendants' argument that the Notice of Default's language "You have the right to cure the default after acceleration" satisfied the mandatory notice of the right to reinstate after acceleration. *Woel*, 2020 R.I. LEXIS 40 at *16-17. The *Woel* Court's explanation of all payments a borrower is required to make to reinstate, including payment of "expenses incurred to enforce the security instrument, including, for example, reasonable attorneys' fees and property inspection and valuation fees" cannot be interpreted to Plaintiffs' conclusion that only principal and interest due on the note and are appropriate subjects of a Notice of Default. Such an interpretation would deny a mortgagee's contractual right to collect funds advanced out of escrow (to pay taxes and insurance), late fees assessed on the account when the Plaintiffs missed their monthly payment, and fees and expenses charged to the account and recoverable under the clear and express terms of the mortgage contract. (Mortgage, ECF No. 1-1 at pp. 7-8 (Protection of Lender's Interest) and p. 10 (Loan Charges).[1])

Plaintiffs also suggest that the *Woel* Court's review of the date to cure requirement somehow demonstrates that Defendants' April 30, 2018 Notice of Default did not provide a

---

[1] A copy of the Mortgage was originally attached to Plaintiffs' Complaint and is attached to this filing as *Exhibit A*.

specific date by which default must be cured. Contrary to Plaintiffs' analysis, there is no dispute in this case that the Notice of Default provided the following deadline to cure:

> In order to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before **06/06/2018**, at the address listed on page four of this notice.

(Notice of Default, ECF No. 1-4 at p. 3.[2]) As they have done so throughout the course of this case, Plaintiffs maintain that there was no date specified because they believe that the "on or before" language included every date from receipt of the letter up to June 6 of 2018. (Objection, ECF No. 29-1 at p. 6.)

Plaintiffs' argument is nonsensical regardless of whether this Court applies the analysis and holdings of *Woel* or *Martins*. In *Martins*, 214 F.Supp. 3d at 169-70, the Rhode Island Federal Court concluded that both notices of default did not strictly comply with Paragraph 22 of the mortgage because neither "stated with specificity the last day by which Ms. Martins was required to pay in order to avoid foreclosure and sale of the Property." *Martins* emphasized the necessity of providing a specific date to cure with the understanding that this was the "last day" by which a borrower could pay to avoid foreclosure. *Id.* The *Woel* decision does not expand the strict compliance requirements from *Martins*; the same requirement remains that a notice of default provide a specific date as opposed to the number of days from delivery. 2020 R.I. LEXIS 40 at *15-16. *Hedco, LTD. v. Blanchette*, 763 A.2d 639, 642-43 (R.I. 2000), another decision upon which Plaintiffs also cite in an attempt to support their claim, similarly required that an evicting landlord provide an actual date, as opposed to a demand to quit "within ten (10) days of the date that this Notice was mailed to you." Unlike *Martins* or *Hedco*, where no date was provided at all, here Plaintiffs believe no date was provided because the Defendants demanded cure on or before

---

[2] A copy of the Notice of Default was originally attached to Plaintiffs' Complaint and is attached to this filing as *Exhibit B*.

4

a specified date of June 6, 2018. Applying *Martins*, June 6, 2018 was the last day Plaintiffs could have cured the default to avoid foreclosure. Moreover, the "on or before" language recognizes the specific disclosure required under mortgage Paragraph 22(d): "that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured…." (Mortgage, ECF No. 1-1 at p. 12.) Rhode Island law and the express terms of the Mortgage reject Plaintiffs' specified date theory.

A comparison of the disclosures Defendants provided to Plaintiffs in the April 30, 2018 Notice of Default with Paragraph 22 of the Mortgage demonstrates strict compliance. Paragraph 22 of the Mortgage required the Lender to provide notice that specified:

> (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

(Mortgage, ECF No. 1-1 at p. 12.) The April 30, 2018 Notice of Default provided the following disclosures: (a) "Mortgage payments on the above referenced account are past due, which has caused a default under the terms of the Mortgage Deed of Trust;" (b) "In order to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before 06/06/2018 at the address listed on page four of this notice;" (c) "Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the Property;" and (d) "A customer has the right to reinstate the account after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." (Notice of Default, ECF No. 1-4 at p. 3.) The disclosures issued to Plaintiffs in the Notice of

5

Default match the required disclosures under Paragraph 22 of the Mortgage. Magistrate Judge Sullivan correctly concluded that the Notice of Default is not tainted by the deficiency condemned in *Martins*, 214 F.Supp.3d at 169-70. *Woel* only bolsters the Report and Recommendation issued in this case particularly where the Rhode Island Supreme Court has effectively adopted the decision and analysis in *Martins*.

> B.  Plaintiffs' Remaining Challenges to the Defendants' Strict Compliance with Paragraph 22 Fail as a Matter of Law.

Plaintiffs read a variety of conditions into the disclosures required in Defendants' Notice of Default that simply do not apply. Plaintiffs allege non-compliance on grounds that the Defendants demanded payment by certified funds in order to cure the default. (Objection, ECF No. 29-1 at pp. 17-18.) According to Plaintiffs, the Defendants were prohibited from demanding certified funds because their interpretation of *Woel* renders the demand of certified funds only available for reinstatement after acceleration under Paragraph 19 of the Mortgage. (*Id.* at 17.) Plaintiffs also cite to Paragraph 5 of the Mortgage to argue that the Defendants were only allowed to demand certified funds in the event Plaintiffs delivered a check that was returned for insufficient funds. (*Id.* at 17-18.) Plaintiffs complain that the demand for certified funds was somehow misleading. The Defendants' demand that Plaintiffs cure the default by certified funds conforms to the disclosure requirements of Paragraph 22 because that paragraph requires the mortgagee to provide the borrowers notice of the "action that is required to cure the default." (Mortgage ECF No. 1-1, p. 12.) Here, the action that Defendants required included that Plaintiffs send certified funds, Money Gram, bank check or money order in order to cure the default. This action in and of itself was not misleading and instead provided Plaintiffs clear and express terms under which they must cure the default.

Plaintiffs also claim deception because the Defendants did not provide notice of the requirements to reinstate the mortgage after acceleration. (Objection, ECF No. 29-1 at pp. 19-26.) Plaintiffs do not dispute that the April 30, 2018 Notice of Default informed them of their right to reinstate after acceleration. Nevertheless, Plaintiffs argue that Notices of Default must disclose the terms and conditions of reinstatement under Paragraph 19. Unlike Paragraph 22 of the Mortgage, Paragraph 19 does *not* require notice of the conditions for reinstatement, does *not* include any notice requirement, and cannot support the Plaintiffs' argument that the Notice of Default is deceptive. (Mortgage, ECF No. 1-1, p. 11.) The Defendants' April 30, 2018 Notice of Default could not have failed strict compliance with Paragraph 22 by omitting any of the conditions for reinstatement under Paragraph 19 for the simple reason that Paragraph 19 does *not* impose any notice requirement whatsoever.

    C.    Plaintiffs Present No Valid Claim to Challenge a Notice of Acceleration under the Promissory Note.

Plaintiffs object to the Report and Recommendations on grounds that loan was not accelerated under the terms and conditions of the Promissory Note. (Objection, ECF No. 29-1, pp. 14-17.) According to the Promissory Note, "If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days form the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower." (Promissory Note, ECF No. 29-2 at p. 5.) Defendants' counsel sent Plaintiffs a letter on or about October 22, 2018, which informed Plaintiffs that the Mortgage Loan had been accelerated, that the total amount of debt, as of October 18, 2018, was $244,247.61, and Plaintiffs were provided

a 30-day period to pay or dispute the validity of the debt. (October 22, 2018 Notice, ECF No. 29-3, pp. 2-3.) The October 22, 2018 letter provides undisputed proof that a notice of acceleration was sent and that the Plaintiffs were provided 30 days to pay. Moreover, the Defendants did not schedule a foreclosure sale until December 31, 2018, more than 70 days after notice of acceleration was sent to Plaintiffs. Having reviewed and heard Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, the Court is well aware that the foreclosure sale never occurred. Plaintiffs present no viable basis to challenge the Defendants compliance with the Promissory Note in pursuing repayment of the debt prior to and foreclosure that was ultimately cancelled.

      D.     Plaintiffs Present no Valid Grounds to Reply upon *Thompson v. JPMorgan Chase* in Objection to the Report and Recommendations.

Plaintiffs argue that the now vacated decision in *Thompson v. JPMorgan Chase*, 915 F.3d 801 (1st Cir. 2019) ("*Thompson I*") should apply to the facts of this case because "*Woel* cited the First Circuit case." (Objection, ECF No. 29-1 at pp. 22-26.) In *Woel*, 2020 R.I. LEXIS 40 at *16 fn. 12, the Rhode Island Supreme Court footnoted the First Circuit's citation to *Pinti v. Emigrant Mortgage Company, Inc.*, 472 Mass. 226, 33 N.E.3d 1213 (Mass. 2015) in *Thompson I*, and noted that the First Circuit vacated *Thompson I* and certified a question to the Massachusetts Supreme Court to review whether a Massachusetts banking regulation required the mortgagee to use language in a notice of default in *Thompson v. JPMorgan Chase, N.A.*, 931 F.3d 109, 110, 111 (1st Cir. 2019) ("*Thompson II*"). The certified question remains pending, but regardless of procedural posture, the Rhode Island Supreme Court determined that *Thompson* "does not apply to this case." The Rhode Island Supreme Court has rejected Plaintiffs' assertion that *Thompson* is applicable to a review of pre-foreclosure notices under Rhode Island law and to this Court's review of the Report and Recommendations.

8

The entire *Thompson* case (*Thompson I*, Thompson *II*, and whatever decision the Massachusetts Supreme Judicial Court issues on certified question) should not apply here, and under Rhode Island law, due to the unique issues on review under Massachusetts law. In *Thompson I*, 915 F.3d at 805, the First Circuit assumed that the JPMorgan Chase was the "one writing the notice" with "ample opportunity and expertise to make it entirely accurate," and added their own language to create a potentially misleading and deceptive notice of default. The error in analysis occurred because Chase's supposed additional language is actually required under Massachusetts law. In 2012, the Massachusetts Division of Banks issued 209 C.M.R § 56.00 *et seq.* to implement the Massachusetts Legislature's enactment of M.G.L. 244, § 35A, which requires mortgage holders to provide borrowers notice of right to cure prior to initiating foreclosure. 209 C.M.R § 56.03 required mortgagees to send a right-to-cure notice that "strictly conforms to the … form under 209 C.M.R § 56.04. The form notice in 209 C.M.R. § 56.04 includes the following sentence: "After [150/90 DAY EXPIRATION DATE], *you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place.*" See 209 C.M.R. § 56.04 (emphasis added).

The reality of Chase's pre-foreclosure notice, and what the First Circuit failed to account for in deciding *Thompson I*, is that Chase included the additional language in order to strictly conform their notice of default to Massachusetts law. In other words, the notice issued in *Thompson* strictly complied with Paragraph 22 of the Thompson mortgage *and* complied with M.G.L. ch. 244 §35A by strictly conforming to the Code of Massachusetts Regulations form at 209 CMR §56.04. Following Chase's Petition for Rehearing, the First Circuit vacated *Thompson I*, withdrew the opinion altogether and certified a question to the Massachusetts Supreme Judicial Court:

> Did the statement in the August 12, 2016, default and acceleration notice that "you can still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place" render the notice inaccurate or deceptive in a manner that renders the subsequent foreclosure sale void under Massachusetts law?

*Thompson II*, 931 F.3d at 111. In doing so, the First Circuit Panel acknowledged Chase's position that the precise language used in the notice sent to the Thompsons was required under Massachusetts law, specifically 209 C.M.R. § 56.04, and that serious harms resulting from the prior issued decision "might prompt the SJC to reexamine its precedents." *Id*

Even if this Court delves into *Thompson I*, at a minimum the Court should recognize that the *Thompson* case and its implications are decidedly focused on Massachusetts law. Review of the notice of default at issue in *Thompson* on its own, and particularly when compared to the notice of default at issue in this case, demonstrates both a document and right to cure procedure that is entirely foreign to this jurisdiction. (*Thompson* Notice of Default, *Exhibit C*.) No mortgage holder has ever, or would ever, issue such a notice because Rhode Island law does not require such mandatory language. The General Assembly has not legislated any counterpart or law similar to M.G.L. ch. 244, § 35A, and the Rhode Island Department of Business Regulation has not issued any regulation similar to 209 C.M.R. § 56.00 *et seq*. Because the First Circuit reviewed a Massachusetts foreclosure, that followed a Massachusetts notice of default and right to cure, and determined, errantly, that the notice did not comply with Massachusetts law, this Court should not consider the *Thompson* decision for guidance on the sufficiency of the Defendants' April 30, 2018 Notice of Default in this case.

> E. The Court Correctly took Judicial Notice of the Plaintiffs' Failure to Complete a Chapter 13 Plan to Decide that Plaintiffs were not Entitled to a Mediation Notice under Rhode Island Law.

Plaintiffs present no valid basis to argue that an issue of fact on their default date precludes this Court from determining that they were not entitled to mediation as a matter of law.

(Objection, ECF No. 29-1 at pp. 26-33.) Plaintiffs continue to ignore entire their own Chapter 13 bankruptcy proceeding, *In re Raymond C. Bradbury and Heather A. Bradbury*, BK No. 12-12104, to attempt this argument. Analysis of Plaintiffs' own bankruptcy proceedings demonstrates that they never cured the 2012 default so that they were not entitled to mediation under Rhode Island law. The United States Bankruptcy Court for the District of Rhode Island confirmed a Chapter 13 plan for Plaintiffs as of November 8, 2012.[3] The confirmed plan required Plaintiffs to make contractual monthly payments to Ocwen at $1,387 per month outside of the plan. The plan also required Plaintiffs to pay a total pre-petition arrearage, estimated at $30,000, out of their 60 months of payments made to the trustee at $620 per month. Those $620 per month payments only applied to the pre-petition arrearage and not to any additional amount owed to Plaintiffs' secured creditor. Finally, the Plaintiffs' Chapter 13 plan provided that all amounts (pre- and post-petition payments) were required from Plaintiffs in order to reinstate (Chapter 13 Plan, ECF No. 24-2 at p. 4.) The bankruptcy court's records alone demonstrates a default that began on September 1, 2012.

In October of 2017, the trustee in Plaintiffs' Chapter 13 bankruptcy petition filed and served a Notice of Final Cure Payment indicating payment of $38,975.89 to Ocwen as part of the allowed pre-petition arrearage. On October 13, 2017, counsel for Plaintiffs' creditor mortgagee, DBNTC, as Trustee, filed a response to the Notice of Final Cure that Plaintiffs were not current on all post-petition payments, that Plaintiffs owed $94,436.41, and that Plaintiffs remained contractually obligated for payments that first became due on August 1, 2012. The Bankruptcy

---

[3] Magistrate Judge Sullivan correctly considered matters of public record to grant Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) including documents from prior court proceedings for which a court may take judicial notice. *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008); *see also Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990); *Pemental v. Wells Fargo Bank, N.A.*, C.A. No. 14-494, 2015 U.S. Dist. LEXIS 120571 at *12 (D.R.I. Sept. 4, 2015); *Rosario v. McElroy*, C.A. No. 15-060, 2015 U.S. Dist. LEXIS 32563 at 6 fn. 3 (Feb. 23, 2015).

Court acknowledged the dispute over final cure and required the Plaintiffs to file a motion for determination of final cure. Plaintiffs never filed a motion to determine final cure on payments. In this case, Plaintiffs have already admitted in this case that they did not make all post-petition payments required under the Chapter 13 plan to cure the default. (Plaintiffs' Affidavit, ECF No. 7 at ¶ 4.) According to Plaintiffs, the last payment they made outside of the pre-petition arrearage payments was May 1, 2014. (*Id.*)

Based upon a review of the bankruptcy petition and Plaintiffs' own affidavit, during the time in which the Plaintiffs were sending regular monthly payments under the plan to the Trustee in order to satisfy the pre-petition arrearage (from November of 2012 up to October of 2017), the Plaintiffs stopped making their post-petition payments. There are no plausible grounds under which the Plaintiffs can establish cure of the September, 2012 default because Plaintiffs admit they did not make all outstanding payments in order to reinstate the loan. *See In re Clark*, 738 F.2d 869 (7th Cir. 1984) (Seventh Circuit concludes that the common law definition of "cure" requires reinstatement of the loan in full and to its position prior to default); *Litton v. Wachovia Bank (In re Litton)*, 330 F.3d 636, 644 (4th Cir. 2003) (Fourth Circuit describes "cure" as reinstating a debt to its pre-default position, or returning the debtor and creditor to their respective positions before the default); *Olsen v. Habitat for Humanity (In re Olsen)*, 363 B.R. 908, 910 (BAP 8th Cir. 2006) ("Curing a default returns the situation to pre-default conditions and nullifies the consequences of that default."); and *In re French*, 174 B.R. 1, 7 (Bankr. D. Mass. 1994) ("the definition of 'cure' under §§ 1322(b)(3) and (5) necessarily required the restoration of the parties' relationship to the *status quo ante*.[4]"). Review of the bankruptcy court

---

[4] "Status quo ante" literally means '[t]he situation that existed before something else (being discussed) occurred." *Status Quo Ante*, Black's Law Dictionary (10th ed. 2014).

record conclusively demonstrates that Plaintiffs never fully restored the loan to its pre-default position. Instead, the record of the bankruptcy court, coupled with Plaintiffs' Affidavit submission in this case, demonstrate that more than three years before the Plaintiffs made all payments to satisfy the pre-petition arrearage, Plaintiffs stopped making post-petition payments to Ocwen.

Plaintiffs' dispute over when they stopped making monthly mortgage payments is irrelevant here because the undisputed facts of their owner bankruptcy petition demonstrate that they defaulted on their August 1, 2012 mortgage payment prior to filing a Chapter 13 bankruptcy payment, that they stopped making post-petition payments to the Defendants in May of 2014, that they did not complete the Chapter 13 plan, and that by failing to complete the Chapter 13 plan, the Plaintiffs never cured the default. These undisputed facts demonstrate that Defendants were not required to issue a notice of mediation and that the Magistrate Judge correctly recommended dismissal of this action. Magistrate Judge Sullivan did not commit any error by concluding that Plaintiffs' uncured date of default was prior to May 16, 2013 so that Rhode Island's Mediation Statute, R.I. Gen. Laws § 34-27-3.2, does not apply.

    F.    Plaintiffs Fail to Establish any Error in the Magistrate's Refusal to Accept Plaintiffs' Interpretation of the Mortgage Contract as Precluding Statutory Power of Sale Foreclosures.

Plaintiffs continue to argue that the mortgage did not convey to Defendants the statutory power of sale without any legitimate argument. (Objection, ECF No. 29-1, pp. 34-47.) Under Rhode Island law, the contractual nature of the relationship between mortgagor and mortgagee establishes the statutory power of sale by grant in the mortgage. *Bucci v. Lehman Bros. et al.*, 68 A.3d 1069, 1081 (R.I. 2013). Plaintiffs concede this precedent but then ignore the contractual language of the mortgage. Plaintiffs ignore the TRANSFER OF RIGHTS IN THE PROPERTY:

13

> This Security Instrument secures to Lender : (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrowers' covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following describe property….

(Mortgage, ECF No. 1-1 at p. 3.) Plaintiffs ignore the NON-UNIFORM COVENANTS of the mortgage through which they covenanted and agreed with their Lender to acceleration and specific remedies described in Paragraph 22. (*Id.* at p. 19.) Paragraph 22 includes the Plaintiffs' express agreement that Defendants are authorized to invoke the statutory power of sale:

> If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law.

(*Id.*) While Plaintiffs go to great length in this case to argue the application of Paragraph 22 in the Mortgage for strict compliance review of the April 30, 2018 Notice of Default, Plaintiffs ignore the very same paragraph that provides an express grant of the statutory power of sale.

Plaintiffs err in arguing that the Defendants' mortgage required the use of specific language[5] in the grant of the statutory power of sale under Rhode Island law. R.I. Gen. Laws § 34-11-12 provides a form Mortgage Deed that the "mortgage is made upon the statutory condition and with the statutory power of sale," but § 34-11-11 provides that the form "may be

---

[5] Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale…. (Plaintiffs' Opposition, ECF. No. 21-1 at p. 2.)

14

used," "shall be sufficient for their respective purposes" and that "authorization of such forms by this chapter shall not preclude the use of other forms." In other words, Rhode Island law does not demand form language, much less the language Plaintiffs demand here. Moreover, the Statutory Power of Sale in mortgage, according to R.I. Gen. Laws § 34-11-22, "may be incorporated by reference." The Legislature has proposed language to be used in mortgage forms and has allowed contracting parties to incorporate Statutory Power of Sale by reference without any particular or specific language. In *Bucci v. Lehman Bros.*, 68 A.3d at 1081, the Rhode Island Supreme Court affirmed the trial court's ruling that MERS had the contractual authority to invoke the statutory power of sale in reliance upon the specific grant to MERS in the mortgage contract. In doing so, the Court opined that the Legislature "has made it explicit that the power of sale provision contained in § 34-11-22 'may be incorporated in any mortgage by reference'…" and that "it is readily apparent that this section was enacted for the purpose of establishing a uniform power of sale provision that could be referred to with ease, if the parties so desired…." *Id.* at 1085. Combining the clear and express terms of the statutes with the interpreting caselaw demonstrate that Plaintiffs have no legal basis to pursue a claim demanding specific operative language.

Beyond the face of the mortgage alone, through which Plaintiffs expressly agreed that Defendants were authorized to foreclose under the statutory power of sale, the allegations of Plaintiffs' complaint demonstrate Defendants' pursuit of a power of sale foreclosure in compliance with the mortgage and Rhode Island law. According to the Complaint's allegations and attached exhibits, the Defendants' foreclosure counsel scheduled a December 31, 2018 foreclosure sale of Plaintiffs home as of November 7, 2018. (Compl. at ¶ 12.) The Notice of Intention to Foreclose was sent to Plaintiffs at the property's address Certified Mail/Return Receipt Requested and confirms Plaintiffs' allegations concerning the notice of sale date.

(Compl. at *Exhibit C*.) The November 7, 2018 Notice of Intention to Foreclose was sent following delivery of an April 30, 2018 Notice of Default. (Compl. at ¶20.)

The mortgage demonstrates that Plaintiffs agreed to foreclosure by the Statutory Power of Sale. The allegations of Plaintiffs' Complaint demonstrate that Defendants engaged Plaintiffs in a default and foreclosure process compliant with the mortgage's power of sale remedy described in Paragraph 22. Plaintiffs present no allegations of fact, no documents, and no viable argument to prove that the mortgage at issue omitted the grant of foreclosure by statutory power of sale. Without any statute or case that mandates the power of sale language Plaintiffs demand in this case, there is no dispute that Defendants agreed to and incorporated the Statutory Power of Sale in the mortgage, and the Court should dismiss this case.

    G.    Plaintiffs Present no Valid Basis to Challenge Dismissal of FDCPA and TILA Claims.

Magistrate Judge Sullivan's recommendation to dismiss Plaintiffs' claims under the Truth in Lending Act ("TILA") and the Fair Debt Collection Practices Act ("FDCPA") relies on Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dismissal was appropriate under 12(b)(6) because the allegations of Plaintiffs' Complaint failed to demonstrate any viable challenge to the Defendants' foreclosure. A necessary byproduct of the Magistrate's finding that there was no "wrongful" attempt to foreclose was a finding of no violations of TILA or FDCPA. Having determined that Defendants were authorized to foreclose under the Statutory Power of Sale, having reviewed the Defendants' April 30, 2018 Notice of Default for strict compliance with Paragraph 22 of the Mortgage, and having demonstrated without question that Defendants were not required to issue a Notice of Mediation on a loan under an uncured default since September of 2012, there are no viable challenges to foreclosure that form the basis of Plaintiffs' TILA or FDCPA claims.

The recommended dismissal of this case also accounted for the absence of any injury-in-fact to pursue violations of TILA or FDCPA. Magistrate Judge Sullivan relied upon *Pemental v. Bank of New York Mellon*. C.A. No. 16-4838, 2017 WL 3279015, *7-8 (D.R.I. May 10, 2017) *adopted* 2017 WL 3278872 (D.R.I. Aug. 1, 2017) to conclude that Plaintiffs' costs and legal fees do not amount to an injury sufficient to establish standing to sue. Plaintiffs continue to argue that their legal fees and costs in this case demonstrate injury. (Objection, ECF. No. 29-1 at pp. 50-51.) Magistrate Judge Sullivan's recommendation to dismiss the TILA and FDCPA claims is consistent with the Rhode Island federal court's application of *Spokeo v. Robbins*, 136 S.Ct. 1540, 1549-50 (2016) in that these causes of action fail for lack of standing because none of the allegations demonstrate an injury-in-fact. Regardless of the absence of any injury-in-fact, the Report and Recommendations concludes that Plaintiffs failed to state any claim for relief under TILA or FDCPA because both claims rely on allegations that require a wrongful foreclosure. There are no fact allegations here to demonstrate a wrongful foreclosure so that a 12(b)(6) dismissal was appropriate.

## III. CONCLUSION

For the reasons stated above, Defendants Deutsche Bank National Trust Company, as Trustee for GSAMP Trust 2005-WMC1 and Ocwen Loan Servicing, LLC request this Court's adoption of the Report and Recommendation to dismiss this case.

Respectfully submitted,

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for GSAMP TRUST 2005-WMC1; and OCWEN LOAN SERVICING, LLC,

By Their Attorneys,

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha, Bar No. 7075
Jamal D. Burk, Bar No. 9550
HINSHAW & CULBERTSON LLP
56 Exchange Terrace, Suite 5
Providence, RI 02903
Telephone: (401) 751-0842
Facsimile: (401) 751-0072
Email: sbodurtha@hinshawlaw.com
jburk@hinshawlaw.com

Dated:   June 22, 2020

## CERTIFICATE OF SERVICE

I, Samuel C. Bodurtha, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on June 22, 2020.

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha

1016248\305876838.v1